# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONG TERM CARE CORP., LLC, *Plaintiff,* <br> v. <br> AGUSTIN RAMOS, *Defendant* | CIVIL ACTION <br> NO. 18-0281 |
| AGUSTIN RAMOS, *Counter Claimant,* <br> v. <br> LONG TERM CARE CORP., LLC, *Counter Defendant* | |
| AGUSTIN RAMOS, *Third Party Plaintiff,* <br> v. <br> ONIX GROUP, STEPHEN S. SILVER, RONALD E. SCHAFER, *Third Party Defendants.* | |

**PAPPERT, J.**                                                                                August 1, 2018

## MEMORANDUM

In early 2016, Long Term Care Corp., LLC ("LTC") hired Agustin Ramos to run two companies owned and operated by LTC and The Onix Group. Dissatisfied with Ramos's performance, LTC fired him the following year. LTC subsequently sued Ramos in the Chester County Court of Common Pleas seeking a declaration, among other things, that Ramos was an at-will employee with no right to further compensation of any kind. (Compl., ECF No. 1.) Ramos removed the case to federal court and asserted six counterclaims against LTC for fraudulent inducement, breach of contract, breach of the duty of good faith and fair dealing, violations of the Wage Payment

Collection Law, unjust enrichment, and promissory estoppel.  (CC, ECF No. 13.)  Ramos also filed a third party complaint against Onix Group and two of its managing members, Stephen S. Silver and Ronald E. Schafer, asserting the same causes of action brought in his Counterclaims against LTC.  (Third Party Compl., ECF No. 6.)

LTC, Onix, Silver and Schafer move to dismiss Ramos's claims for fraudulent inducement, breach of duty of good faith and fair dealing, unjust enrichment and promissory estoppel.[1]  (LTC Mot., ECF No. 16; Third Party Mot., ECF No. 15.)  The Court grants in part and denies in part both motions, with leave to amend some of the claims, for the reasons that follow.

I

While Ramos was Chief Operating Officer of NMS Healthcare in December 2015, he entered into negotiations with LTC and Onix Group, through Silver and Schafer, to become the Chief Executive Officer of Cadia Rehabilitation and New Castle Rx, LLC.  (CC ¶¶ 19-20; Third Party Compl. ¶¶ 19-20.)  LTC and Onix operate and manage Cadia and its five healthcare facilities which provide long-term care services in Delaware and Pennsylvania.  Onix also operates and manages New Castle, which supplies long-term care pharmacy services to healthcare facilities operated by Onix.  (CC ¶¶ 6-8; Third Party Compl. ¶¶ 6-8.)

Onix sent Ramos a February 24, 2016 letter (the "Offer Letter") with attachments including a Schedule of Employment Terms and a separate Confidentiality

---

[1]  The defendants also seek to "dismiss," rather than strike, elements of the damages Ramos seeks in the breach of contract and Wage Payment Collection Law claims, specifically his base salary, profit sharing and equity interest in an entity subsequently acquired by Onix.  *See* Fed. R. Civ. P. 12(f).  The defendants, however, do not move to dismiss the breach of contract and Wage Payment Collection Law claims and the Court will not address their contentions regarding Ramos's requested remedies at this time.

Agreement addressing confidentiality, non-solicitation and non-competition. (Compl. Ex. A; Third Party Compl. Ex. A.) The Offer Letter states that as CEO, Ramos was to identify and acquire new facilities to expand the healthcare business and report to Onix's management committee. (*Id.*) The Offer Letter further stated that "[a] minimum three (3) year commitment of employment to the Company is required" and that the signing of, and compliance with, the Confidentiality Agreement was a "condition of employment." (*Id.*)

Pursuant to the Schedule of Employment Terms, Ramos would receive a salary of $125,000 per year. He was entitled to profit sharing, namely specified percentages of improvement in the company's net operating income depending on his time of service. (*Id.*) Ramos could also receive "a promote of 10% plus an opportunity to secure an additional 5% and to purchase an additional equity position allowing for a total investment of up to 30% for new projects identified and brought in by you where such acquisitions occur." (*Id.*) The Schedule also set forth the following "Employment Condition": "Although it is expected that you will commit to a term of at least 3 years of employment, employment is provided on an At Will basis." (*Id.*)

Ramos accepted the position and resigned from NMS. In doing so, he forfeited a 25% equity ownership in Wellness LLC, a company presumably associated with NMS. (CC ¶¶ 19-20; Third Party Compl. ¶¶ 19-20.) Ramos began working as CEO of Cadia and New Castle on April 4, 2016. (CC ¶ 27; Third Party Compl. ¶ 27.) In May 2017, Ramos learned that an NMS facility in Hagerstown, Maryland would likely shut down. (CC ¶ 27; Third Party Compl. ¶ 27.) Ramos told Silver and Schafer who then instructed Ramos to attempt to buy the property. (CC ¶¶ 32-47; Third Party Compl. ¶¶ 32-48.)

Ramos spoke to representatives from Sabra Health Care, REIT, Inc., which owned the facility, several times throughout May and June, about Cadia's desire to take over the property. (*Id.*) Silver subsequently set up a meeting with Sabra and excluded Ramos from those and further negotiations. (*Id.*) Ramos was fired on July 27, 2017, before Onix acquired the NMS facility. (*Id.*) Ramos contends that his contract to run Cadia and New Castle was for a fixed three year term and that he was fired with twenty months remaining on the deal. He seeks to recover damages for his lost salary, profit sharing, and equity interest in the anticipated NMS acquisition.

II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them

plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

III

A

Ramos claims that he was fraudulently induced to resign from NMS and join Onix under a three year contract, not as an at-will employee. LTC, Onix, Silver and Schafer correctly contend that Ramos's fraudulent inducement claims should be dismissed because they are barred under the gist of the action doctrine. (LTC Mot. at 5-9; Third Party Mot. at 6-9.)

The gist of the action doctrine "operates to preclude a plaintiff from re-casting ordinary breach of contract claims into tort claims." *Hart v. Arnold*, 884 A.2d 316, 339 (Pa. Super. Ct. 2005). The critical factor in determining whether the claim is truly one in tort or for breach of contract is the nature of the duty alleged to have been breached, as established by the underlying assertions supporting the claim. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014). Application of the doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *J.J. DeLuca Co. v. Toll Naval Assocs.*, 56 A.3d 402, 415 (Pa. Super. Ct. 2012). Duties created by the terms of the contract are those "specific promise[s] to do something that a party would not ordinarily have been obligated to do but for the existence of the contract." *Bruno*, 106

A.3d at 68. Duties that extend to all individuals regardless of the contract are duties based in and regarded as tort. *Id.* Furthermore, if "the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *The Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2009 WL 3427054, at *5 (E.D. Pa. Oct. 20, 2009), *aff'd*, 625 F. App'x 27 (3d Cir. 2015).

Ramos's fraudulent inducement claims are intertwined with his breach of contract claims. The gravamen of Ramos's argument is that he was led to believe that he would join the company for a three year term, not that he would be an at-will employee. The contract that Ramos entered into with LTC and Onix governs whether Ramos's employment was for a three year term or on an at-will basis and thus, the duty to employ Ramos arose solely from the contract between the parties. Since the alleged duty to keep Ramos as CEO for three years is the same duty Ramos claims the company breached when it fired him, his fraudulent inducement claims are barred by the gist of the action doctrine. Courts have dismissed fraudulent inducement claims pursuant to the gist of the action doctrine if precontractual statements that are the basis for the fraudulent inducement claim concern the specific duties outlined in the alleged contract. *Wen v. Willis*, 117 F. Supp. 3d 673, 681 (E.D. Pa. 2015); *Integrated Waste Solutions, Inc. v. Goverdhanam*, No. 10-2155, 2010 WL 4910176, at *11 (E.D. Pa. 2010); *Guy Chemical Co., Inc. v. Romaco S.p.A.*, No. 06-96, 2009 WL 840386, at *15 n.7 (W.D. Pa. 2009). [2]

---

[2] Since Ramos's fraudulent inducement claims are dismissed, he is not entitled to seek punitive damages. *See* Fed. R. Civ. P. 12(f)(1); *Aaron v. State Farm Fire and Casualty Co.*, No. 17-2606, 2017 WL 3484087, at *2 (E.D. Pa. Aug. 14, 2017).

B

Ramos next alleges that LTC and Onix intentionally denied him the opportunity to participate in the negotiations with Sabra, thereby breaching a duty of good faith and fair dealing. That claim is dismissed as well. The "prevailing rule in Pennsylvania is that a claim alleging a breach of the covenant of good faith must be pled as a breach of contract claim." *Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586, 594 (E.D. Pa. 2011) (referencing *McHolme/Waynesburg, LLC v. Wal–Mart Real Estate Business Trust*, No. 08–961, 2009 WL 1292808 (W.D. Pa. May 7, 2009)). Generally, "Pennsylvania law would not recognize a claim for breach of [the] covenant of good faith and fair dealing as an independent cause of action separate from the breach of contract claim [if] the actions forming the basis of the breach of contract claim are essentially the same as the actions forming the basis of the bad faith claim." *McHale v. NuEnergy Grp.*, No. 01-4111, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27, 2002); *see also King of Prussia Equipment Corp., v. Power Curbers, Inc.*, 158 F. Supp. 2d 463, 466-67 (E.D. Pa. 2001); *Northview, Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78 (3d Cir. 2000).

In his breach of the duty of good faith and fair dealing claims, Ramos seeks damages related to his participation in the acquisition of the NMS property. He seeks the same damages in his breach of contract claims and thus, the breach of contract claims subsume the allegations that he was intentionally cut out of participating in the NMS deal. The breach of a duty of good faith and fair dealing claims are therefore

dismissed without prejudice.[3]

C

LTC, Onix, Silver and Schafer move to dismiss Ramos's claims for unjust enrichment given his breach of contract allegations. (LTC Mot. at 10-12; Third Party Mot. at 16-17.) "Pennsylvania law prohibits recovery under the theory of unjust enrichment if the relationship between the parties is governed by written contract." *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006) (citing *Wilson Areas Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006)). Although Ramos contends that he entered into contracts with LTC and Onix, he may allege a claim for unjust enrichment in the alternative. *See id.* (permitting plaintiff to allege claims for breach of contract and unjust enrichment despite the legal impossibility of recovery under both since plaintiffs are permitted to plead in the alternative). The Court denies the motions to dismiss with respect to the unjust enrichment claims and can reconsider the defendants' arguments at summary judgment.

D

Ramos also asserts a claim for promissory estoppel, presumably on the basis that he was promised a three year term of employment. LTC, Onix, Silver and Schafer contend that Ramos's claims for promissory estoppel must be dismissed since he was an at-will employee. (LTC Mot. at 10-12; Third Party Mot. at 16-17.) Although

---

[3] In his Response to the defendants' motions, Ramos contends for the first time that the employment contract he claims LTC and Onix breached was also somehow a "partnership agreement" which created fiduciary duties between the parties. (Resp. in Opp. to LTC Mot. ("Resp. I") at 20, ECF No. 20, Resp. in Opp. to Third Party Mot. ("Resp. II") at 17, ECF No. 17.) Neither Ramos's Counterclaims nor Third Party Complaint contain such an assertion and the Court cannot consider allegations made exclusively in a party's motion papers. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). To the extent Ramos now wishes to contend that his hiring made him a partner in a specific partnership with specific people and entities and he can allege facts to support such a theory, he may do so by amending his Counterclaims and Third Party Complaint.

"[p]romissory estoppel permits the enforcement of promises that are unsupported by consideration to prevent or remedy manifest injustice," *Lyon Fin. Servs., Inc. v. Woodlake Imaging, LLC*, No. 04-3334, 2005 WL 331695, at *9 (E.D. Pa. Feb. 9, 2005), it is "firmly established that Pennsylvania courts do not recognize a cause of action for promissory estoppel in the context of at-will employment, *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 646 (E.D. Pa. 2004).

Under Pennsylvania law, employment is presumed to be at-will. *Engstrom v. John Nuveen & Co., Inc.*, 668 F. Supp. 953, 957 (E.D. Pa. 1987); *Geary v. United States Steel Corp.*, 319 A.2d 174 (Pa. 1974). An employee must rebut the at-will presumption with clear evidence that the employment relationship was contractual. *Brooks v. Sys. Mfg. Corp.*, No. 03-1523, 2004 WL 2028755, at *3 (E.D. Pa. Sept. 10, 2004). To do so, the employee must show either: (1) an agreement for a definite duration; (2) an agreement specifying that the employee will be discharged for just cause only; (3) sufficient additional consideration; or (4) an applicable recognized public policy exception." *Id.* (citing *Luteran v. Loral Fairchild Corp.*, 688 A.2d 211, 215 (Pa. Super. Ct. 1997)).

When interpreting a contract, the Court must ascertain the intention of the parties who executed the contract. *Vallone v. Electronic Data Systems*, No. 04-4744, 2005 WL 318754, at *3 (E.D. Pa. Feb. 9, 2015) (citing *Z & L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (Pa. Super. Ct. 1985)). If the terms are clearly expressed, the intention of the parties must be determined from the language of the contract. *Id.* If the language is ambiguous, the Court must consider extrinsic evidence to determine the parties' intent. *Id.*

Again, Ramos's employment is presumed to be at-will, a presumption he must rebut with clear evidence to the contrary. Ramos believes that he was employed for a fixed, three year term based on the language in the Offer Letter stating "[a] minimum three (3) year commitment of employment to the Company is required." (Compl. Ex. A; Third Party Compl. Ex. A.) While this provision purports to require Ramos to work for the company for at least three years, it does nothing to obligate the company to keep him around for that long and certainly does not provide clear evidence rebutting the at-will presumption. More importantly, the Schedule of Employment Terms states clearly that: "Although it is expected that you will commit to a term of at least 3 years of employment, employment is provided on an At Will basis." (*Id.*) This provision does not rebut the at-will presumption either because it does not include a specific and definite term of employment. *See Marsh v. Boyle*, 530 A.2d 491, 494 (Pa. Super. Ct. 1987) ("In the case before us, the employer's assurances that Appellant would be working as publisher "for at least two years" was not sufficiently definite to take the agreement out of the at-will employment presumption.").[4]

The Offer Letter states that signing and complying with the Confidentiality Agreement, nominally attached to the Offer Letter and the Schedule of Employment Terms and thus part of the contract, was a condition of Ramos's employment. Ramos has not attached that Agreement to his Counterclaims or Third Party Complaint,

---

[4] Ramos also contends that even if the terms did not include a specific duration of employment, he can overcome the presumption of at-will employment because he provided "additional consideration" when he forfeited his 25% equity interest in Wellness LLC to become the CEO of Cadia and New Castle Rx. (Resp. I at 15; Resp. II at 15-16.) This argument is also defeated by the provision in the Schedule of Employment Terms stating that he would be employed on an at-will basis. *See Willis v. Am. Customer Care*, No. 4-2606, 2006 WL 3042982, at *8 (M.D. Pa. Oct. 25, 2006); *Sharp v. BI/IP Int'l Inc.*, 991 F. Supp. 451, 458 (E.D. Pa. 1998) ("If the parties specifically agreed that the employment would be at-will, even though additional consideration were present, we would expect a court to construe the contract according to the parties' stated intention and hold it to be at-will.").

preventing the Court from determining whether any language in the document rebuts the presumption that he was an at-will employee or at least introduces an ambiguity into the Court's interpretation of his employment relationship. To the extent that Ramos believes the Confidentiality Agreement supports his contention that he was hired for a fixed, three year term, he may amend his Counterclaims and Third Party Complaint accordingly, attaching the Agreement for the Court's consideration.

    An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.