# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LONG TERM CARE CORP., LLC, *Plaintiff,* v. AGUSTIN RAMOS, *Defendant* | CIVIL ACTION NO. 18-0281 |
| AGUSTIN RAMOS, *Counter Claimant,* v. LONG TERM CARE CORP., LLC, *Counter Defendant* | |
| AGUSTIN RAMOS, *Third Party Plaintiff,* v. ONIX GROUP, STEPHEN S. SILVER, RONALD E. SCHAFER, *Third Party Defendants.* | |

**PAPPERT, J.**                                                                                         November 8, 2018

**<u>MEMORANDUM</u>**

Long Term Care Corp., LLC fired Agustin Ramos in late July 2017 and subsequently sued him in state court seeking a declaration, among other things, that Ramos was an at-will employee. (Compl., ECF No. 1.) Ramos removed the case to federal court, asserting six counterclaims against LTC. (Answer & Am. Countercl., ECF No. 13.) He also filed a self-styled "third-party complaint" asserting the same causes of action against Onix Group and two of its managing members, Stephen S.

Silver and Ronald E. Schafer. (Third-Party Compl., ECF No. 6.)[1] LTC, Onix, Silver and Schafer moved to dismiss Ramos' claims for failure to state a claim under Rule 12(b)(6). (LTC's Mot. Dismiss, ECF No. 16; Third-Party Mot. Dismiss, ECF No. 15.) On August 1, 2018, the Court granted the Motions in part and denied them in part, allowing Ramos leave to amend his counterclaims. (Mem. & Op., ECF No. 22.)

In his amended pleading, Ramos alleges breach of contract, breach of the duty of good faith and fair dealing, breach of contract of implied partnership, violations of the Pennsylvania Wage Payment and Collection Law, unjust enrichment and promissory estoppel. (Answer & Second Am. Countercl., ECF No. 24; Am. Third-Party Compl., ECF No. 25.) LTC, Onix, Silver and Schafer filed Motions to Dismiss Ramos' claims for breach of duty of good faith and fair dealing, breach of contract of implied partnership and promissory estoppel. (LTC's Mot. Dismiss, ECF No. 26; Third-Party Mot. Dismiss, ECF No. 27.) The Court grants both Motions and dismisses those claims with prejudice for the reasons that follow.

---

[1] By doing so, Ramos confused the case's procedural posture and terminology. Onix, Silver and Schafer are not "third-party defendants" under Federal Rule of Civil Procedure 14. Rule 14(a) states that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). Third-party complaints are therefore characterized by the defendant's attempt "to transfer to the third-party defendant the liability asserted against him by the original plaintiff." 6 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1446 (3rd ed. 1971). The third-party defendants' liability cannot be an independent or related claim but must be based upon the plaintiff's claim against the defendant. *Id.* The claims asserted by Ramos against Onix, Silver and Schafer are not based upon LTC's claims against Ramos; instead, they are counterclaims against LTC. *See Balt. & Ohio R. Co. v. Cent. Ry. Servs., Inc.*, 636 F. Supp. 782, 786 (E.D. Pa. 1986) (finding that Rule 14 was inapplicable where the claims asserted by the defendants against the third-party defendants were not based upon the plaintiffs' claims against the defendants). Although Onix, Silver and Schafer are not third-party defendants under Rule 14, they meet the standards for joinder under Rule 13(h), which provides for the joinder of additional parties as defendants on a counterclaim in accordance with Rules 19 and 20. Fed. R. Civ. P. 13(h); *see also F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994). The Court will hereafter refer to Onix, Silver and Schafer as the "Joined Parties."

I

This case's factual background and Ramos' initial allegations were presented in the Court's August 1, 2018 Memorandum Opinion and need not be repeated here. In that decision, the Court dismissed with prejudice Ramos' fraudulent inducement claims because they were barred under the gist of the action doctrine. (Mem. & Op. at 5–6.) The Court dismissed without prejudice Ramos' allegation that LTC and the Joined Parties breached the duty of good faith and fair dealing. (*Id.* at 7–8.) Noting that Ramos sought the same damages in his breach of contract claims and breach of a duty of good faith and fair dealing claims, the Court held that Ramos' "breach of contract claims subsume[d] the allegations that he was intentionally cut out of participating in the NMS deal." (*Id.* at 7.) In a footnote, the Court stated that Ramos' Response to the Defendants' Motions seemed to contend that "the employment contract was also somehow a 'partnership agreement' which created fiduciary duties between the parties." (*Id.* at 8 n.5.) The Court granted Ramos leave to amend if there were facts he could allege showing that "his hiring made him a partner in a specific partnership with specific people and entities and he can allege facts to support such a theory." (*Id.*)

The Court denied the Motions with respect to Ramos' unjust enrichment claim, stating that it would reconsider the Defendants' arguments at summary judgment. (*Id.* at 8.) Finally, the Court dismissed without prejudice Ramos' promissory estoppel claims because Ramos failed to rebut Pennsylvania's at-will employment presumption. (*Id.* at 8–10.) The Court concluded that the exhibits attached to the pleadings—Ramos' Offer Letter and Confidential Employment Terms—did not provide clear evidence rebutting the presumption. (*Id.* at 10–11.) The Court found that Ramos' Offer Letter

required him to sign and comply with a "Confidentiality Agreement, nominally attached to the Offer Letter and the Schedule of Employment Terms and thus a part of the contract" as a condition of employment. (*Id.* at 10.) The Court instructed Ramos that "[t]o the extent [he] believes the Confidentiality Agreement supports his contention that he was hired for a fixed, three year term, he may amend his Counterclaims and Third Party Complaint accordingly, attaching the Agreement for the Court's consideration." (*Id.* at 11.)

In Ramos' most recent version of his pleading, he alleges the same claims for breach of the duty of good faith and fair dealing and promissory estoppel. He also adds, arguably beyond the scope of the Court's leave, a new and separate claim for breach of contract of an implied partnership.

II

A

Ramos' allegations with respect to breach of the duty of good faith and fair dealing remain unchanged from those previously dismissed as insufficient. *See* (Answer & Am. Countercl. ¶¶ 72–76; Third-Party Compl. ¶¶ 72–76; Answer & Second Am. Countercl. ¶¶ 71–78; Am. Third-Party Compl. ¶¶ 71–78). The Court granted Ramos leave to amend if he could allege that there was an implied partnership which created fiduciary duties between him and the parties. (Mem. & Op. at 8 n.5.) Since Ramos failed to cure the deficiencies identified in the Court's August 1 Opinion, these claims are dismissed with prejudice.

4

B

What Ramos does purport to add to his amended counterclaims is a new breach of contract claim based on an implied partnership. (Answer & Second Am. Countercl. ¶¶ 71–78; Am. Third-Party Compl. ¶¶ 71–78.) Under Pennsylvania law, a partnership is defined as "an association of two or more persons to carry on as co-owners a business for profit." 15 Pa. Cons. Stat. § 8311(a). A partnership can be created by an express or implied contract. *Murphy v. Burke*, 311 A.2d 904, 907 (Pa. 1973). Although a partnership agreement does not need to be in writing, it must be composed of clear, mutual assent on the part of two or more persons. *Id.* A partnership may exist by implication from the circumstances and manner in which business is conducted. *In re Estate of Caruso*, 176 A.3d 346, 349 (Pa. Super. Ct. 2017).

The latest iteration of Ramos' counterclaims against LTC and the Joined Parties does nothing to state a claim that his proposed employment contract was, in actuality, a partnership agreement or that there existed any type of partnership, implied, express or otherwise, between the parties. To the contrary, the new allegations are mostly conclusory, not to mention somewhat silly. Referencing that part of his February 24, 2016, Offer Letter which states his potential to participate as an "equity partner" in projects where he can help his new employers acquire new facilities and expand their business, Ramos makes a rather large leap and dubs his new employment opportunity a "partnership." (Answer & Second Am. Countercl. ¶ 72; Am. Third-Party Compl. ¶ 72.) The newfound entity is now comprised of him, LTC, Onix, Silver and Shafer. (Answer & Second Am. Countercl. ¶ 72.) He even creates, out of whole cloth, a name for the "partnership," calling it "the Acquisition Team." (Answer & Second Am. Countercl. ¶

5

72; Am. Third-Party Compl. ¶ 72.) Ramos then asserts that this "partnership" was formed upon his resignation from his prior employer and that "the parties' mutual assent to the partnership is evidenced in the Agreement . . . and all attendant facts and circumstances." (Answer & Second Am. Countercl. ¶ 74; Am. Third-Party Compl. ¶ 74.) To be clear, the Agreement is comprised solely of Ramos' Offer Letter and its attached Confidential Employment Terms, including those stating that his "employment is provided on an At Will basis." (Answer & Second Am. Countercl. Ex. A; Am. Third-Party Compl. Ex. A.)

Ramos never says what specific "attendant facts and circumstances" he is referring to and the phrase seems to be included in the claim to merely parrot a legal standard. Moreover, the "Agreement" does nothing to evidence "mutual assent to the partnership." The Agreement is titled on its face an "Employment Letter." (Answer & Second Am. Countercl. Ex. A; Am. Third-Party Compl. Ex. A.) It offers Ramos the position of Chief Executive Officer for Cadia Rehabilitation and New Castle Rx and provides specific salary terms and an opportunity to participate in profit sharing should those companies experience an "increase in net income from operations" during Ramos' watch. (Answer & Second Am. Countercl. Ex. A; Am. Third-Party Compl. Ex. A.) The Letter states that the "profit sharing element of your compensation" applies to business ventures where he does "not have an equity interest." (Answer & Second Am. Countercl. Ex. A; Am. Third-Party Compl. Ex. A.)

As CEO, Ramos was to report to Cadia and New Castle's "management committee," as well as Silver and Schafer, who far from being described as partners in the "Acquisition Team," were, according to the "Agreement," the Company's managing

members.  (Answer & Second Am. Countercl. Ex. A; Am. Third-Party Compl. Ex. A.)  The title "Acquisition Team" appears nowhere in the "Agreement" that Ramos contends evidences the partnership that he claims goes by that name.

Ramos' allegations are devoid of any facts suggestive of clear, mutual assent between the parties.  They form no basis for an assertion that a specific partnership was formed at the time of his hiring.  Moreover, it is inherently contradictory for Ramos to argue that an implied partnership existed when documents purportedly evidencing it expressly provide, as an "employment condition," that Ramos' prospective "employment is provided on an At Will basis."  (Answer & Second Am. Countercl. Ex. A; Am. Third-Party Compl. Ex. A.)

C

To the extent that Ramos' promissory estoppel claims are based on a promise of three-year employment, the Court again finds, for the reasons stated in its prior Memorandum, that he has not alleged any facts which could rebut the presumption under Pennsylvania law that his employment was at-will.  *See Engstrom v. John Nuveen & Co., Inc.*, 668 F. Supp. 953, 957 (E.D. Pa. 1987) (holding that employment in Pennsylvania is presumed to be at-will); *see also Brooks v. Sys. Mfg. Corp.*, No. 03-1523, 2004 WL 2028755, at *3 (E.D. Pa. Sept. 10, 2004) (finding that an employee must rebut the at-will presumption with clear evidence that the employment relationship was contractual).  In granting Ramos leave to amend, the Court directed him to attach the purportedly separate Confidentiality Agreement to the extent that it could support his contention that he was hired for a fixed, three-year term. (Mem. & Op. at 11.)  Ramos failed to do so and there is nothing new for the Court to consider.

7

In his Responses to the Defendants' Motions to Dismiss, Ramos attempts to argue that his promissory estoppel claim is not based solely on the promise of a three-year term of employment. (Ramos' Mem. Opp'n Mot. Dismiss Second Am. Countercl. & Am. Third-Party Compl. at 14.) Ramos claims that he resigned from NMS in reliance on "the promise to include Ramos as an equity partner in connection with any new healthcare facilities or new business acquired by Third-Party Defendants that Ramos identified and brought to them." (Answer & Second Am. Countercl. ¶¶ 92–93; Am. Third-Party Compl. ¶¶ 92–93.) Inasmuch as Ramos has not alleged any facts to support the existence of an implied partnership, a claim premised on this theory also fails.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.